UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| TARYN MOYNIHAN, on behalf of herself and all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| AES GROUP USA, LLC d/b/a KEY AUTISM SERVICES, KEY AUTISM SERVICES OPR, LLC d/b/a KEY AUTISM SERVICES, TRINITY KEY HOLDINGS, LLC, DON FOSTER, AVINOAM SCHECTER, and YOSSI ZAKLIKOWSKI, | ) ) ) ) ) ) ) ) ) ) | Civil Action No. |
| Defendants. | ) ) | |

**COMPLAINT AND JURY DEMAND**

**I. INTRODUCTION**

1. Taryn Moynihan brings this action on behalf of herself and other individuals ("Plaintiffs") who were employed by Key Autism Services ("KAS") as Board-Certified Behavioral Analysts ("BCBAs") and have been required to sign unlawful and unconscionable contracts imposing a repayment obligation of at least $20,000 on employees if they do not work for KAS for at least one year after completing their initial phase of employment.

2. KAS violated the Fair Labor Standards Act, 29 U.S.C. § 216, by failing to pay Plaintiffs their wages "finally and unconditionally."

3. KAS attempts to force employees to perform labor for its financial benefit by using the threat of enforcing these contracts to cause persons to believe that, if they do not

1

perform labor for KAS, they will suffer serious harm. This conduct violates Chapter 77 of Title 18 of the U.S. Code, 18 U.S.C. §§ 1589 and 1594 ("forced labor statute").

4. As to Plaintiffs who worked for KAS in Massachusetts, KAS's practices violate the Massachusetts Wage Act and the Massachusetts forced labor statute.

5. Plaintiffs seek compensatory and punitive damages, as well as injunctive relief.

## II. PARTIES

6. Plaintiff TARYN MOYNIHAN is an adult resident of Middlesex County, Massachusetts. From June 2022 until approximately August 2022, Moynihan was employed by Key Autism Services MA as a Board-Certified Behavioral Analyst ("BCBA") in Suffolk County, Massachusetts. Moynihan was an "employee" of KAS as defined by the FLSA.

7. Moynihan brings her claims under the Fair Labor Standards Act ("FLSA") on behalf of all similarly situated individuals who may choose to "opt in" to this action pursuant to 29 U.S.C. § 216(b). The claims under the FLSA meet the requirements for collective action certification set forth in 29 U.S.C. § 216(b).

8. Pursuant to 29 U.S.C. § 216(b), Moynihan consents to sue as a plaintiff under the Fair Labor Standards Act. Her consent to sue form is attached as Exhibit 1.

9. Moynihan brings her claims under 18 U.S.C. § 1589, et seq., on behalf of all similarly situated individuals pursuant to Rule 23(b)(2) and Rule 23(b)(3) of the Federal Rules of Civil Procedure. The proposed class meets the requirements of Rule 23(b)(2) and Rule 23(b)(3) of the Federal Rules of Civil Procedure for class certification.

10. Moynihan brings her claims under Massachusetts law on behalf of all similarly situated individuals pursuant to Rule 23(b)(2) and Rule 23(b)(3) of the Federal Rules of Civil

Procedure. The proposed class meets the requirements of Rule 23(b)(2) and Rule 23(b)(3) of the Federal Rules of Civil Procedure for class certification.

11. Defendant AES GROUP USA, LLC is a Massachusetts limited liability corporation that maintains its records in Middlesex County, Massachusetts. On information and belief, AES Group USA, LLC does business in Massachusetts as "Key Autism Services."

12. Defendant KEY AUTISM SERVICES OPR, LLC is a limited liability company incorporated in New Jersey. On information and belief, Key Autism Services OPR, LLC does business as "Key Autism Services" in Colorado, Georgia, Illinois, Massachusetts, North Carolina, and Texas. Key Autism Services OPR, LLC issued paychecks to Plaintiff Taryn Moynihan.

13. Defendant TRINITY KEY HOLDINGS, INC. is a Delaware corporation with a principal office in Monmouth County, New Jersey. It is a person(s) authorized to execute, acknowledge, deliver, and record any recordable instrument purporting to affect an interest in real property on behalf of Defendant AES Group USA, LLC. It is the owner of the "Key Autism Services" trademark.

14. Defendant DON FOSTER is the self-described "Co Owner" of and "Chief Talent Officer" for Key Autism Services. He is an individual authorized to execute documents to be filed with the Corporations Division of the Secretary of the Commonwealth of Massachusetts on behalf of Defendant AES Group USA, LLC. Don Foster is actively engaged in the day-to-day operations of Key Autism Services, including developing, implementing, and approving employment policies, setting employees' pay rates, hiring and firing employees, and directing employees' work.

15. Defendant AVINOAM SHECHTER is an individual authorized to execute documents to be filed with the Corporations Division of the Secretary of the Commonwealth of Massachusetts on behalf of Defendant AES Group USA, LLC. He was a President, Treasurer, and Director of AES Group USA, Inc. before it converted into AES Group USA, LLC in March 2019. He is the Chief Executive Officer of Defendant Key Autism Services OPR, LLC. On information and belief, Avinoam Schechter is actively engaged in the day-to-day operations of Key Autism Services, including developing, implementing, and approving employment policies, setting employees' pay rates, hiring and firing employees, and directing employees' work.

16. Defendant YOSSI ZAKLIKOWSKI is an individual who is listed as a manager and/or principal of Defendant Key Autism Services OPR, LLC in various corporate filings. He was a Secretary and Director of AES Group USA, Inc. before it converted into AES Group USA, LLC in March 2019. On information and belief, Yossi Zaklikowski is actively engaged in the day-to-day operations of Key Autism Services, including developing, implementing, and approving employment policies, setting employees' pay rates, hiring and firing employees, and directing employees' work.

17. At all times relevant to this action, Defendant AES GROUP USA, LLC, Defendant KEY AUTISM SERVICES OPR, LLC, and Defendant TRINITY KEY HOLDINGS, INC. ("the corporate Defendants") acted as an integrated enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203(r)–(s).

18. Upon information and belief, the corporate Defendants had gross sales made or business done in excess of $500,000 annually for each of the years from 2020 through 2022.

19. The corporate Defendants "employed" Moynihan and were an "employer" of Moynihan as defined by the FLSA.

## III. JURISDICTION AND VENUE

20. Jurisdiction is proper in this Court under 28 U.S.C. § 1331 because this case arises under the laws of the United States. Specifically, this action arises under Chapter 8 of Title 29 of the U.S. Code, 29 U.S.C. § 201, *et seq*. and Chapter 77 of Title 18 of the U.S. Code, 18 U.S.C. §§ 1589 and 1594.

21. Plaintiffs request that this Court exercise supplemental jurisdiction over their claims under the laws of Massachusetts pursuant to 28 U.S.C. § 1367.

22. Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendants are subject to the Court's personal jurisdiction due to their substantial contacts with and conduct of business in the state of Massachusetts.

## IV. FACTS

23. Key Autism Services ("KAS") is a for-profit business that provides in-home and community-based "Applied Behavior Analysis" or "ABA" services to children diagnosed with Autism Spectrum Disorder.

24. KAS provides these services in Colorado, Georgia, Illinois, North Carolina, Massachusetts, and Texas.

25. KAS is not approved by the Massachusetts Department of Public Health's Early Intervention Division to provide specialty services to children who qualify for Early Intervention.

26. KAS employs Board-Certified Behavioral Analysts ("BCBAs"), who provide in-home assessments of autistic children, design behavior support plans, train parents, and supervise behavioral therapists, who implement the plans.

5

27. BCBAs perform significant portions of their work from home, analyzing informal assessments, writing progress reports for parents, entering information into KAS's software, creating skill acquisition programs for clients, research and development of behavior support plans, and printing and laminating.

28. BCBAs begin and end their workdays at home.

29. BCBAs use their own cars to drive to and from clients' homes.

30. In Massachusetts, KAS reimburses BCBAs for their mileage between one client's home and another client's home, but does not reimburse BCBAs for mileage during the workday from BCBAs' home offices to clients' homes, or from clients' homes back to their home offices.

31. As a contractual condition of employment, KAS requires new BCBAs to work for at least one year after completing what is described in the contract as a "mentoring" program of up to six months.

32. The mentoring program is described in the contract as follows: "Key Autism provides its new BCBAs with up to six months of Mentoring. Mentoring allows you to have a reduced workload so that you may focus on learning and refining your skills in order to provide quality services to our clients."

33. The contract states that if the employee terminates employment during the alleged "mentoring" program, or within one year after completing the program, the employee is required to immediately pay the amount of $20,000 to KAS, with interest accruing at the rate of six (6) percent per year on unpaid amounts.

34. The contract describes this $20,000 as "liquidated damages" because "KAS will incur administrative and recruiting costs in obtaining a replacement for you, [] KAS will lose the benefit of its investment in the [sic] you in providing Mentoring, KAS will be unable to provide

6

services to clients, and [] KAS may face potentially increased compensation costs, all of which amounts are difficult to determine with certainty."

35. On information and belief, KAS's alleged costs associated with mentoring are negligible. To the extent that KAS does incur any such costs, they are KAS's ordinary business expenses which should be borne by KAS, not its employees.

36. Plaintiff Moynihan was hired in Massachusetts pursuant to the "mentoring" contract.

37. Moynihan's "mentoring" consisted of scheduled weekly meetings via videoconference with another KAS employee and a KAS regional director.

38. On information and belief, the "mentoring" provided by KAS is nothing more than routine supervision and standard on-the-job training that employers routinely provide to new hires.

39. The Behavior Analyst Certification Board requires first-year BCBAs to be supervised during the first year of practice as a BCBA.

40. During the recruitment process, Moynihan was told that she would only have a caseload of four in-home clients during the "mentoring" period, but KAS immediately assigned her to six in-home clients.

41. As a result of being overworked and stressed, Moynihan submitted her notice of resignation by email on August 19, 2022, after approximately two months of employment.

42. On Monday, August 22, 2022, a Human Resources Lead for KAS emailed Moynihan to remind her that if she resigned before completing her contract, she would "be responsible for the liquidated damages associated with the contract" and included in the email an

image of that specific provision of the contract; the email further stated that Moynihan should give her a "call to discuss if there is anything we can do regarding your resignation."

43. On September 9, 2022, Defendant Don Foster sent Moynihan an email laying out her options for completing her contractual obligations and reminding her that "your contract is still in force and Key will use any remedy it sees fit to exercise its rights under this agreement. This can include a legal remedy, that you would be responsible for. I am looking for a mutual amicable solution."

44. On information and belief, KAS routinely references the liquidated damages provision of the contract to prevent employees from leaving the company within the first year-and-a-half of their employment.

45. On or around October 19, 2022, KAS sent Moynihan a letter signed by Defendant Don Foster demanding payment:

> [Y]ou chose to terminate your employment and therefore breached of the terms of your Employment Agreement. Accordingly, KAS hereby demands that you comply with the express terms of the Employment Agreement and immediately pay KAS $20,000. Please contact me no later than November 2, 2022 to discuss remittance of these funds.
>
> If we do not hear from you by November 2, 2022, we will assume you do not wish to amicably resolve this matter. Accordingly, we may pursue any and all legal options available to enforce the terms of the Agreement.

46. Although Moynihan has not returned to work for KAS, Moynihan is terrified by the prospect of being pursued by KAS for $20,000 and feels like she is being blackmailed into returning to a job she does not want.

47. On information and belief, other new hires who "tried to get out" within a few months of being hired wound up staying on, after being threatened by KAS with the $20,000 in liquidated damages.

48. KAS's wage payments to Moynihan were not made finally and unconditionally; rather, they were made conditional on her continued employment by KAS for a period of more than a year.

49. By failing to pay Moynihan's wages finally and unconditionally, or "free and clear," as required by the FLSA, KAS cannot be deemed to have met the wage requirements of the FLSA, which includes the requirement to pay no less than the federal minimum wage for each hour worked.

50. KAS attempts to force employees, including Moynihan, to perform labor for its financial benefit by using the threat of enforcing the "liquidated damages" provision of its employment contracts to attempt to cause persons to believe that, if they do not perform labor for KAS, they will suffer serious harm, in violation of the federal forced labor statute, 18 U.S.C. §§ 1589 and 1594 ("forced labor statute").

51. The contract that Moynihan and other Massachusetts BCBAs were required to sign constitutes an unlawful special contract under the Massachusetts Wage Act, because it requires the assignment of future wages to KAS; therefore, KAS failed to pay Moynihan her earned wages free and clear.

52. KAS also violated the Massachusetts Wage Act by failing to reimburse BCBAs for mileage to and from clients' homes.

53. KAS subjected, or attempted to subject, Moynihan and other BCBAs to forced services within the meaning of the Massachusetts law prohibiting forced labor by causing or threatening to cause them financial harm, including by means of illegal employment contracts.

## V. FAIR LABOR STANDARDS COLLECTIVE ACTION ALLEGATIONS

54. Plaintiff Taryn Moynihan asserts her minimum wage claims against the corporate Defendants under the FLSA, pursuant to 29 U.S.C. § 216(b), on behalf of herself and on behalf of all other similarly situated employees currently and formerly employed by Defendants.

55. Pending any modifications necessitated by discovery, Plaintiffs preliminarily define the collective for which they seek certification under section 216(b) as follows:

> All individuals who have worked as board-certified behavioral analysts for Key Autism Services, in any state, while subject to a contractual "liquidated damages" provision.

56. These claims meet the requirements for collective action certification under the FLSA.

57. All potential opt-in plaintiffs are similarly situated with respect to the FLSA claims because they all worked as BCBAs for Defendants and all suffered from the same unlawful policies, specifically that they were not paid their wages "finally and unconditionally."

## VI. FORCED LABOR RULE 23(b)(2) CLASS ACTION ALLEGATIONS

58. On information and belief, Defendants have knowingly obtained, or attempted to obtain, the labor of the named plaintiff, and other similarly situated employees, by means of threats of serious harm, by means of the abuse or threatened abuse of law or legal process, and/or by means of a scheme, plan, or pattern intended to cause persons to believe that, if they did not perform labor for the company, they would suffer serious harm.

59. Defendants' threats of serious harm and abuse or threatened abuse of law or legal process include, *inter alia*, threatening current employees with a payment obligation of $20,000 if they terminate their employment with KAS, threatening former employees with legal action if

they do not return to work for KAS or make payments toward the $20,000, and threatening to take legal action against former employees who do not pay KAS $20,000.

60. These actions also constitute a scheme, plan, or pattern intended to cause persons to believe that, if they do not perform labor for the company, they will suffer serious harm.

61. On information and belief, Defendants use the threat of collecting $20,000 dollars in alleged debt from BCBAs only because it is and has been a successful strategy for preventing employees from leaving their employment.

62. Plaintiffs assert their claims against Defendants under the federal statute prohibiting forced labor, Chapter 77 of the U.S. Code, 18 U.S.C. § 1589, et seq., on behalf of a class pursuant to Fed. R. Civ. P. 23(b)(3).

63. Pending any modifications necessitated by discovery, Plaintiffs preliminarily define the following class:

> All individuals who have worked as board-certified behavioral analysts for Key Autism Services in any state while subject to a contractual "liquidated damages" provision.

64. All potential Rule 23 plaintiffs are similarly situated with respect to the forced labor claim because, inter alia, they were required to sign contracts with exorbitant liquidated damages provisions and performed work subject to these contracts, and were subjected to:

   a. threats of serious harm; and/or

   b. the abuse or threatened abuse of law or legal process; and/or

   c. a scheme, plan, or pattern intended to cause persons to believe that, if they did not perform labor for the company, they would suffer serious harm.

65. The members of the class are so numerous that joinder of all of them is impracticable. On information and belief, the number of class members is in the hundreds.

66. There are issues of law and fact common to all class members, because Defendants' labor practices apply to all class members. The common questions of law and fact predominate over any questions affecting individual class members.

67. The claims of the named plaintiff are typical of the claims of all members of the class, because all members of the class were subject to the same unlawful practices.

68. The named plaintiff and her counsel will fairly and adequately represent the interests of the class.

69. The claims asserted on behalf of the class predominate over any question of law or fact affecting only individual members of the class. The predominant questions of law or fact are clear, precise, well-defined, and applicable to the named plaintiff as well as every absent member of the proposed class.

70. A class action is superior in this case for several reasons including, but not limited to, that: the case challenges uniform practices; many class members may be reluctant to bring claims individually for fear of retaliation; some class members may not have the motivation or resources to bring their claims individually; and it would be an inefficient use of scarce judicial resources to require each individual affected by the practices challenged herein to bring his or her own individual claim.

### VII. MASSACHUSETTS RULE 23(b)(2) CLASS ACTION ALLEGATIONS

71. Plaintiff asserts her claims against Defendants under the Massachusetts Wage Act and the Massachusetts forced labor statute on behalf of a class pursuant to Fed. R. Civ. P. 23(b)(3).

72. Pending any modifications necessitated by discovery, Plaintiffs preliminarily define the following class:

>All individuals who have worked as board-certified behavioral analysts for Key Autism Services in Massachusetts while subject to a contractual "liquidated damages" provision.

73. All potential Rule 23 plaintiffs are similarly situated with respect to the Massachusetts wage claims because, inter alia, they were required to sign contracts with exorbitant liquidated damages provisions and performed work subject to these contracts, and were subjected to:

    a. Wage payments that were not made free and clear; and
    b. The threat of financial harm if they did not continue working for KAS.

74. The members of the class are so numerous that joinder of all of them is impracticable. On information and belief, the number of class members exceeds 40.

75. There are issues of law and fact common to all class members, because Defendants' labor practices apply to all class members. The common questions of law and fact predominate over any questions affecting individual class members.

76. The claims of the named plaintiff are typical of the claims of all members of the class, because all members of the class were subject to the same unlawful practices.

77. The named plaintiff and her counsel will fairly and adequately represent the interests of the class.

78. The claims asserted on behalf of the class predominate over any question of law or fact affecting only individual members of the class. The predominant questions of law or fact are clear, precise, well-defined, and applicable to the named plaintiff as well as every absent member of the proposed class.

79. A class action is superior in this case for several reasons including, but not limited to, that: the case challenges uniform practices; many class members may be reluctant to bring

claims individually for fear of retaliation; some class members may not have the motivation or resources to bring their claims individually; and it would be an inefficient use of scarce judicial resources to require each individual affected by the practices challenged herein to bring his or her own individual claim.

## VIII. EXHAUSTION OF ADMINISTRATIVE REMEDIES

80. On November 5, 2022, the Massachusetts Attorney General's Office informed Moynihan by letter of her private right of action to pursue her claims on behalf of herself and others similarly situated under the Massachusetts Wage Act.

### COUNT I – FAIR LABOR STANDARDS ACT
### (Unpaid Wages Claim)

81. Defendants' conduct, as set forth above, violates the minimum wage provisions of the FLSA.

82. Because Defendants failed to pay wages "finally and unconditionally," Defendants cannot be deemed to have met the wage requirements of the FLSA, which includes the requirement to pay no less than the federal minimum wage for each hour worked.

83. Defendant's actions constitute willful violations of the FLSA within the meaning of 29 U.S.C. § 255(a).

84. Plaintiff and others similarly situated bring this claim to recover all unpaid minimum wages plus an additional equal amount in liquidated damages, costs of suit, and reasonable attorneys' fees pursuant to 29 U.S.C. § 216(b).

### COUNT II – CHAPTER 77 FORCED LABOR
### (Forced Labor Claim)

85. Defendants' conduct, as set forth above, violates the federal statute prohibiting forced labor, Chapter 77 of the U.S. Code.

86. Defendants have knowingly obtained the labor of persons, including the named plaintiff, by means of threats of serious harm, by means of the abuse or threatened abuse of law or legal process, and/or by means of a scheme, plan, or pattern intended to cause persons to believe that, if they did not perform labor for the company, they would suffer serious harm in violation of 18 U.S.C. § 1589(a).

87. Defendants have attempted to obtain the labor of persons, including the named plaintiff, by means of threats of serious harm, by means of the abuse or threatened abuse of law or legal process, and/or by means of a scheme, plan, or pattern intended to cause persons to believe that, if they did not perform labor for the company, they would suffer serious harm in violation of 18 U.S.C. § 1594(a).

88. This claim is brought against Defendants on behalf of the named plaintiff and all other similarly situated individuals pursuant to 18 U.S.C. § 1595.

## COUNT III – MASSACHUSETTS WAGE ACT

89. Defendants violated the Massachusetts Wage Act, G.L. c. 149, §§ 148 and 150 by entering into an unlawful special contract with their Massachusetts employees that require employees to assign future wages to Defendants.

90. Defendants failed to pay employees their earned wages "free and clear."

91. Defendants further violated the Wage Act by failing to reimburse employees for mileage to and from clients' homes.

92. This claim is brought against Defendants on behalf of the named plaintiff and other similarly situated Massachusetts employees to recover all unpaid wages, unreimbursed mileage, plus treble damages, attorneys' fees and costs, interest, and any other relief available to them under G.L. c. 149, § 150.

## COUNT IV – MASSACHUSETTS FORCED LABOR
### (Massachusetts Forced Labor Claim)

93. Defendants' conduct violates G.L. c. 265, § 51 by knowingly subjecting or attempting to subject employees to forced services as defined by § 49.

94. Plaintiffs brings this claim pursuant to G.L. c. 260, § 4(d)(a) and G.L. c. 265, Section 51(d).

## JURY DEMAND

The Plaintiffs demand a jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter the following relief:

A. Certification of the proposed opt-in class pursuant to the FLSA, 29 U.S.C. § 201, *et seq*.;

B. Permission for Plaintiff to notify similarly situated individuals of their right to opt in to this action to pursue a claim under the FLSA, pursuant to 29 U.S.C. § 216(b);

C. An award of damages for all minimum wages that are due to Plaintiff and all opt-in plaintiffs under the FLSA;

D. Statutory liquidated damages under the FLSA;

E. A finding that Defendants' violation of the FLSA was willful and that, therefore, the statute of limitations for the FLSA claim is three years;

F. Certification of the federal forced labor claim as a class action under Fed. R. Civ. P. 23(b)(3) and Fed. R. Civ. P. 23(b)(2);

G. An award of damages to Plaintiffs, including compensatory damages and punitive damages, pursuant to 18 U.S.C. § 1595;

H. Appropriate injunctive and declaratory relief to further the purpose of the forced labor statute;

I. Certification of the Massachusetts Wage Act claim as a class action under Fed. R. Civ. P. 23(b)(3) and Fed. R. Civ. P. 23(b)(2);

J. An award of unpaid wages, other damages, and treble damages to Plaintiffs for unpaid wages pursuant to G.L. c. 149, § 150;

K. An award of actual damages to Plaintiffs pursuant to G.L. c. 260, § 4(d)(a);

L. A finding that Defendants' acts were willful and malicious and that, therefore, Plaintiffs are entitled to treble damages pursuant to G.L. c. 260, § 4(d)(a);

M. An award of compensatory damages to Plaintiffs pursuant to G.L. c. 260, § 4(d)(a);

N. An award of punitive damages to Plaintiffs pursuant to G.L. c. 260, § 4(d)(a);

O. Appropriate injunctive relief to prevent Defendants from continuing the legal violations described herein;

P. An award of attorneys' fees and costs;

Q. An award of pre- and post-judgment interest to Plaintiffs; and

R. Any other relief to which the named plaintiff and similarly situated individuals may be entitled.

TARYN MOYNIHN, on behalf of herself and all others similarly situated,

By their attorneys,

*/s/ Rachel Smit*
Rachel Smit, BBO #688294
Brook Lane, BBO #678742
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
(617) 607-3260
rachel@fairworklaw.com
brook@fairworklaw.com

Dated: November 9, 2022